# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **A.T.-1, L.T., and A.T.-2**

**No. 19-0781** (Kanawha County 18-JA-341, 18-JA-343, and 18-JA-344)

**FILED**
**April 6, 2020**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father A.T.-3, by counsel Edward L. Bullman, appeals the Circuit Court of Kanawha County's July 24, 2019, order terminating his parental rights to A.T.-1, L.T., and A.T.-2.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem, Sharon K. Childers, filed a response on behalf of the children in support of the circuit court's order and a supplemental appendix. On appeal, petitioner argues that the circuit court erred in adjudicating him upon a single incident and terminating his parental rights without allowing him more time for improvement.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In June of 2018, the DHHR filed an abuse and neglect petition that alleged that petitioner was charged criminally with "felony DUI with serious injury, DUI with a minor, and DUI with bodily injury." These charges stemmed from an incident in which petitioner struck another

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, because two of the children and petitioner share the same initials, we will refer to them as A.T.-1, A.T.-2, and A.T.-3, respectively, throughout this memorandum decision.

1

motorist when driving while under the influence. A.T.-1, then two years old, was in the vehicle and was not properly restrained, resulting in the child suffering a broken tibia. The child's mother was also in the vehicle. According to the petition, the other driver involved in the accident "sustained a head injury and possible broken neck." The petition further indicated that, following the accident, "[a] good [S]amaritan" opened the back door of petitioner's vehicle "and pulled . . . [A.T.-1] out from under the driver's seat." According to the petition, "[a] large syringe was located inside of [petitioner's] vehicle." Although the mother tested positive for benzodiazepines upon admission to the hospital, petitioner left the hospital against medical advice before he could undergo preliminary bloodwork. Hospital employees, however, observed that petitioner had "fixed and dilated pupils" and was "frequently nodding off." Law enforcement responded to the hospital and located petitioner, after which he failed a field sobriety test. An officer additionally observed that petitioner had "constricted pupils, droopy eyelids, and . . . had depressed reflexes and slow responses." During law enforcement's investigation, petitioner admitted to having ingested Percocet prior to operating the vehicle. Law enforcement ultimately obtained blood samples from petitioner on the night of the accident. Based on petitioner's conduct, the DHHR alleged that petitioner failed to provide the children with necessary supervision, among other things, and placed the children in risk of harm. Further, the DHHR alleged that petitioner's conduct constituted "extreme maltreatment and negligent treatment . . . under circumstances which harm and threaten the life, health and welfare of the children." Petitioner thereafter waived his preliminary hearing. Additionally, early in the proceedings the DHHR and the guardian moved the circuit court to order that petitioner receive services in regard to the conditions of abuse and neglect alleged in the petition. Petitioner objected to the provision of services, however, with the exception of drug screens.

At an adjudicatory hearing in September of 2018, the circuit court heard testimony from multiple witnesses, including emergency personnel who responded to the accident in question and law enforcement officers who investigated petitioner's conduct. The testimony was consistent with the allegations in the petition. However, the hearing was continued several times in order to obtain the results of petitioner's blood tests from the night in question. The results ultimately indicated that petitioner tested positive for several controlled substances, including clonazepam, diazepam, buprenorphine, oxycodone, and etizolam—a drug petitioner's counsel indicated is not prescribed in the United States. Petitioner testified that he had prescriptions of varying ages for several of the drugs present in his blood and was also taking either Suboxone or Subutex because he "used to have . . . a substance abuse problem." In regard to the etizolam, petitioner testified that he had "no idea" what that drug was. The circuit court also heard evidence that petitioner received a letter from his treating physician approximately four days after the accident that indicated the doctor could no longer treat him "[d]ue to the results of [his] most recent drug screen." Petitioner additionally disputed the evidence that established A.T.-1 was not in a car seat at the time of the accident and further indicated that he believed that his conduct following the accident was due to a concussion, although he fails to cite to any medical records to support this alleged diagnosis.

Ultimately, the circuit court found that petitioner neglected the children due to his failure to provide them with necessary supervision, among other necessities, in addition to the fact that his substance abuse negatively affected his ability to parent. Specifically, the circuit court found that petitioner drove a vehicle "while under the influence" of multiple controlled substances

2

while A.T.-1 was in the car. Contrary to the testimony of petitioner and other witnesses on his behalf, the circuit court found that emergency personnel testified that A.T.-1 had no seat restraint injuries, which was consistent with the child's medical records. Due to the lack of proper restraint, A.T.-1 suffered a fractured tibia. The circuit court further found that petitioner could not "provide details of the prescriptions that he admitted to taking the day of the accident," and that two separate police officers "testified that it was in their expert opinion that . . . [petitioner] was under the influence that day." These opinions were further supported by the fact that petitioner failed a field sobriety test after the accident.

In July of 2019, the guardian filed a report that included information concerning petitioner's "extensive criminal history," such as prior charges for boating under the influence, public intoxication, and "numerous DUIs." The report also indicated that petitioner was charged with possession of a controlled substance on August 13, 2018, "when officers discovered a straw and numerous pills inside plastic baggies," and was charged with two additional counts of possession of a controlled substance without a valid prescription on August 28, 2018. The guardian also asserted that on July 2, 2019, petitioner tested positive for methamphetamine and amphetamine, in addition to other substances. According to the guardian's report, petitioner "continue[d] to deny that [he] endangered the[] minor child on the day of the accident."

Later in July of 2019, the circuit court held a dispositional hearing, during which it heard testimony from a DHHR employee and petitioner, among other witnesses. Petitioner moved for a post-adjudicatory improvement period. Ultimately, the circuit court entered an order denying petitioner's motion for a post-adjudicatory improvement period due to his failure to acknowledge the conditions of abuse and neglect. The circuit court further found that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect because he "made no effort to rectify the circumstances" that led to the petition's filing. Because the children's welfare required it, the circuit court terminated petitioner's parental rights.[2] It is from the July 24, 2019, dispositional order that petitioner appeals.[3]

---

[2]A.T.-1's mother successfully completed an improvement period, had the child returned to her care, and the petition against her was dismissed. The permanency plan for the child is to remain in her care. L.T. and A.T.-2 remain in the custody of their nonabusing mother with a permanency plan to remain in her care.

[3]Despite the fact that petitioner's notice of appeal specifically indicates that he appealed from the circuit court's July 24, 2019, "Order Adopting [DHHR]'s Proposed Findings of Fact and Conclusions Of Law Regarding Disposition," petitioner nonetheless filed a motion in the circuit court to set aside this order because it was entered "prior to counsel for [petitioner] having an opportunity to review the proposed order." On the same day that petitioner filed his notice of appeal—August 23, 2019—the circuit court granted petitioner's motion. Thereafter, the circuit court entered an almost identical order titled "[DHHR]'s Proposed Findings of Fact and Conclusions of Law Regarding Disposition" on September 16, 2019, that again denied petitioner's request for an improvement period and terminated his parental rights to the children. Following the entry of this order, petitioner never moved to amend his notice of appeal with this

(continued . . . )

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner's first argument is that "a single incident of injury to a minor child . . . is insufficient to adjudicate a child as abused or neglected when otherwise the father had been a good parent providing for the emotional and physical needs of the child." Simply put, this assignment of error has no basis in fact or law. Importantly, petitioner was not adjudicated solely because of the injury to A.T.-1 but, instead, because of his substance abuse and its impact on his ability to properly parent the children. Petitioner's argument on appeal, however, only highlights his continued failure to acknowledge his substance abuse issues, as the circuit court found below. According to petitioner, he did not suffer from substance abuse issues and, instead, was simply under the influence of prescribed medications. This argument ignores important evidence from the record.

---

Court. Further, we note that, regardless of whether petitioner was permitted to review the proposed order and lodge objections thereto prior to its entry, the July 24, 2019, order constitutes a dispositional order and terminated his parental rights to the children. As such, petitioner lacked standing to move to set aside that order, given that this, essentially, constituted a motion to modify disposition. *See* Syl. Pt. 6, *In re Cesar L.*, 221 W. Va. 249, 654 S.E.2d 373 (2007) ("A person whose parental rights have been terminated by a final order . . . does not have standing as a 'parent,' pursuant to [West Virginia Code § 49-4-606] to move for modification of disposition of the child with respect to whom his/her parental rights have been terminated."). For these reasons, we decline to address any issue concerning the circuit court's later entry of orders related to disposition in this matter and note that it is unnecessary, for purposes of addressing petitioner's assignments of error on appeal, to look beyond the July 24, 2019, order denying petitioner's request for an improvement period and terminating his parental rights to the children.

Contrary to petitioner's assertion that he was simply "mixing . . . different controlled substances he has been treating with through two different physicians," the record shows that on the night of the accident petitioner tested positive for etizolam, a drug for which petitioner did not have a valid prescription. Indeed, petitioner could not have had a valid prescription for this drug because, per his counsel's admission below, "it's not even prescribed here . . . in the United States." Additionally, petitioner's testimony regarding his other prescriptions was unclear and referenced prescriptions that he "previously had" for several of the drugs for which he tested positive. Based on this evidence, the circuit court specifically found that petitioner "cannot provide details of the prescriptions he admitted to taking the day of the accident." In further contradiction to petitioner's argument that he was simply taking prescribed medications and could not have anticipated the effects thereof, the record shows that, approximately four days after the accident in question, petitioner was "released from his doctor due to failed drug screens." Based on the totality of the evidence, the circuit court found that petitioner neglected the children because his "substance abuse issues have negatively affected his ability to parent" them. As such, it is clear that petitioner's argument that he was adjudicated for a "single . . . injury to a minor child" has no basis in fact.

Further, West Virginia Code 49-1-201 defines "neglected child" as one

[w]hose physical or mental health is harmed or threatened by a present refusal, failure or inability of the child's parent . . . to supply the child with necessary food, clothing, shelter, *supervision*, medical care, or education, when that refusal, failure, or inability is not due primarily to a lack of financial means on the part of the parent.

(Emphasis added). As outlined above, the evidence overwhelmingly established that petitioner's substance abuse resulted in his inability to provide the children with proper supervision. While it is true that petitioner's improper supervision manifested in the accident in which A.T.-1 was injured, this by no means establishes that this lone incident was the basis for petitioner's adjudication. On the contrary, this incident was simply direct evidence of petitioner's inability to provide the children with proper supervision. This includes the fact that petitioner failed to properly restrain A.T.-1—despite having a car seat in the vehicle at the time—and caused the child to suffer a broken tibia. Clearly, petitioner's substance abuse negatively affected his parenting in such a way as to threaten the welfare of all the children because of his inability to provide proper supervision, and resulted in actual harm to A.T.-1 because of petitioner's reckless conduct, for which he was charged criminally. Accordingly, it is clear that the circuit court did not err in adjudicating petitioner of neglecting the children.

In his second assignment of error, petitioner argues that the circuit court should have granted him an improvement period before terminating his parental rights because he was "willing to work on recovery" and could correct the conditions of abuse and neglect. We disagree. As this Court has long held, the decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015) ("West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period."); syl. pt. 6, in part, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d

589 (1996) ("It is within the court's discretion to grant an improvement period within the applicable statutory requirements . . . ."). Further, as this Court has recognized,

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (citation omitted).

In ruling on petitioner's motion for a post-adjudicatory improvement period, the circuit court specifically found that petitioner failed to establish he would be likely to fully participate because of his lack of acknowledgment of his problems. Indeed, the record establishes that petitioner not only refused to acknowledge the conditions of abuse and neglect below, but objected to the imposition of services, other than drug screens, designed to correct those conditions. In fact, on appeal to this Court petitioner continues to demonstrate a lack of acknowledgement of the issues that necessitated the petition's filing. In his brief on appeal, petitioner asserts that he was willing to "work on recovery" regarding "the interplay" of his prescribed medications that "impaired [his ability to drive] without him realizing it." Petitioner's continued assertion that the issues below concerned only the interplay of his prescribed medications is belied by the record, which shows that petitioner's treating physician discharged him from further treatment following the results of a drug test, he tested positive on the night of the accident for a substance for which he did not have a valid prescription, he tested positive for methamphetamine during the proceedings, and he was charged with three counts of possession of a controlled substance during the proceedings. Further, the record shows that petitioner has an extensive history of DUIs. This evidence clearly shows that petitioner has a protracted history of substance abuse. On appeal, petitioner alleges, with no citation to any evidence to support the claim, that his positive screen for methamphetamine "was a false positive as there was no history of methamphetamine use." We decline to accept petitioner's unsupported assertion regarding this positive screen and, instead, find that it is more evidence of petitioner's ongoing substance abuse issues. Given petitioner's refusal to acknowledge the conditions of neglect for which he was adjudicated, we find no abuse of discretion in the circuit court's denial of petitioner's motion for an improvement period.

Further, petitioner's failure to acknowledge the conditions of neglect and the fact that he "made no efforts to rectify the circumstances that led to the filing of th[e] [p]etition" supports the circuit court's finding that there was no reasonable likelihood petitioner could substantially correct the conditions of abuse and neglect in the near future. According to West Virginia Code § 49-4-604(c)(3), a situation in which there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected in the near future includes one in which

> [t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health, or other rehabilitative agencies designed to reduce or prevent the

abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare, or life of the child.

As set forth above, petitioner actively objected to the imposition of services designed to remedy the conditions of neglect. Additionally, the record shows that the children's welfare required termination of petitioner's parental rights, given his refusal to even acknowledge the conditions of neglect. Pursuant to West Virginia Code § 49-4-604(b)(6), circuit courts may terminate parental rights upon these findings. Further, we have long held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). As such, it is clear that the circuit court did not err in terminating petitioner's parental rights without granting him an improvement period.

For the foregoing reasons, we find no error in the decision of the circuit court, and its July 24, 2019, order is hereby affirmed.

Affirmed.

**ISSUED**: April 6, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison